## KALI INLA COAL CO. v. CRAIG.

No. 2340.    Opinion Filed November 19, 1912.

(128 Pac. 117.)

DEAD BODIES—Burial—Liability for Expenses. Section 2388, Comp. Laws 1909, makes it the duty of certain persons, naming them, to bury the body of deceased relatives, dependents, or others, and further provides that, in case of failure of any person on whom this duty is cast to perform the requirements of the law, then that duty shall devolve upon the person next specified, and, if all omit to act, it devolves upon the tenant, or if there be no tenant, then upon the owner of the premises upon which the body may be found. Held that, under the facts as disclosed by the record in this case, a coal company in whose mine certain miners lost their lives was liable for their burial expenses.

(Syllabus by Robertson, C.)

*Error from District Court, Latimer County; Malcom E. Rosser, Judge.*

Action by Will D. Craig against the Kali Inla Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Read & McDonough,* for plaintiff in error.

*H. H. Smith (C. R. Hunt on the brief),* for defendant in error.

Opinion by ROBERTSON, C. Some time in March, 1910, an explosion occurred in the coal mine belonging to plaintiff in error at Cambria, Okla., whereby four Italian miners lost their lives. The superintendent of the mine was absent at the time

of the accident and immediately thereafter, being in Fort Smith, Ark.; the mine at the time being in charge of John Patterson, the regular foreman. The testimony in the case clearly shows that Patterson, the foreman, directly after the explosion occurred, while in his office in a room connected with a building used by the Baker-Reed Mercantile Company, and in which last-named building was a telephone used in common by the parties, on being apprised of the death of the four miners, asked Mr. Lorie, the manager of the Baker-Reed Mercantile Company, if he knew the name of an undertaker nearby, and, being answered in the negative, thereupon requested Mr. Lorie to ask "central" to connect him with some undertaker at Hartshorne, whereupon "central" connected them with Will D. Craig, defendant in error, who was informed by Mr. Lorie at the request of Patterson, the foreman, that there were four dead miners at the mine, and also told that the company requested him to come out and take charge of the bodies and bury them. There is some dispute as to the exact conversation had over the phone, Craig, however, testifying positively that he was told that the company wanted him to come out and take charge of the bodies and bury them. Acting on this telephone conversation, Craig went to the mine, and, with the knowledge and consent of Patterson, took charge of the dead bodies, furnished caskets, hearse, and wagons, and buried the dead men as requested, and presented the bill for the same to plaintiff in error for payment, which was refused. Suit was brought, trial had to a jury, and a verdict returned in favor of Craig, the undertaker, and against the coal company, upon which judgment was entered, and to reverse which this appeal is prosecuted.

The only assignment of error urged by the coal comapny necessary for us to consider is that even though Patterson, the foreman, did order Craig to furnish the caskets, and bury the dead miners, such act, on the part of Patterson, was beyond the scope of his authority, and therefore not binding upon the company, and that such a contract, even though made, would be *ultra vires,* and not within the charter powers of the corporation. With such contention we have but little sympathy, especially in

such a case as this. The coal company in its brief urges that "it was a corporation, engaged in the business of mining coal— no other business. Therefore it had no power to purchase coffins or to make funeral arrangements for its employees." This may be true. The record, however, fails to show what the charter powers of the company were. It occurs to us, however, that even though it was limited by charter, or statute, to the mining of coal, yet under the law, it would be authorized to do any other thing necessarily incident to the conduct of its business. Had a mule died in the mine, the company would have had no trouble in reaching the conclusion that it had authority to spend money in taking it out and burying it. The fact is established that these bodies—four human beings, whose lives were lost while in the service of this corporation—were lying dead in the mine. The work of the mine could not proceed until they were removed. It was the imperative duty of the company to remove them, and, after their removal, to make such disposition of them as the law of the state required. With most people the common dictates of humanity would have been sufficient to see that decent sepulture be given these unfortunates. It must be assumed, there is nothing in the record to refute it, and the conduct of the company warrants the assumption that the corporation acted in the premises only when required to act. That being true, the law provides a method, and fixes the duty of disposing of dead bodies such as these.

Section 2388, Comp. Laws 1909, provides:

"The duty of burying the body of a deceased person devolves upon the persons hereinafter specified. * * * Fourth: In case the person upon whom the duty of burial is cast by the foregoing provisions, omits to make such burial within a reasonable time, the duty devolves upon the person next specified; and if all omit to act, it devolves upon the tenant, or, if there be no tenants, upon the owner of the premises," etc.

The next section provides that, in case a person, upon whom the duty of burying is devolved by law, omits to perform his duty, he shall be deemed guilty of a misdemeanor, and punished accordingly, and, in addition thereto, be liable to pay to the per-

son performing that duty in his stead treble expenses incurred by the latter in making the burial.

The record in this case shows that the deceased were Italians. It is not shown that they had any relatives or friends, and we shall assume they had none, else arrangements would have been made by them for their burial. No one came to claim them. It was necessary that the bodies be removed from the mine. The foreman, the one highest in authority representing the corporation (and for the time being and purpose he was the superintendent, acting on his best judgment), ordered defendant in error to take charge of and bury the dead bodies. Under the circumstances of this case, it was his plain duty to do so. Under the provisions of the statute above quoted, the plain duty also devolved upon the company as it might devolve upon any individual in the state to bury the deceased. The company, if it did not feel liable for the expense, might, and possibly may yet, be reimbursed for its outlay. But primarily the duty rested on it to bury them. For this purpose the foreman, acting as he was, as the superintendent of the mine, in the absence of the regular superintendent, was clothed with ample power and authority to bind the company for the necessary expense in burying the dead bodies. As such acting superintendent he made the contract with Craig, and the company is liable for the expense thus incurred.

It follows that the judgment of the district court of Latimer county is right, and should be affirmed.

By the Court: It is so ordered.